[Cite as *Stat v. Laizure*, 2016-Ohio-3252.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MICHAEL LAIZURE | : | Case No. 2015 AP 10 0056 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                  Court of Common Pleas, Case No.
                                  2015 CR 04 0101



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 May 26, 2016



APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

MICHAEL J. ERNEST                          MARK A. PERLAKY
Assistant Prosecuting Attorney             Tuscarawas County Public Defender
125 E. High Avenue                         153 N . Broadway St.
New Philadelphia, Ohio 44663               New Philadelphia, Ohio 44663

*Baldwin, J.*

{¶1}   Plaintiff-appellant State of Ohio appeals from the October 7, 2015 Judgment Entry of the Tuscarawas County Court of Common Pleas granting the Motion to Suppress filed by defendant-appellee Michael Laizure.

STATEMENT OF THE FACTS AND CASE

{¶2}   On April 7, 2015, the Tuscarawas County Grand Jury indicted appellee Michael Laizure on one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (I), a felony of the fourth degree, and one count of trafficking in marihuana in violation of R.C. 2925.03(A)(2) and 2925.03(C)(3)(a), a felony of the fifth degree.  At his arraignment on May 8, 2015, appellee entered a plea of not guilty to the charges.

{¶3}   Appellee, on June 22, 2015, filed a Motion to Suppress, arguing that the arresting officer did not have reasonable and articulable suspicion or probable cause to stop appellee's vehicle. Appellee argued that the marihuana and loaded handgun found after the stop should, therefore, be suppressed.  A hearing on the motion was held on September 11, 2015.

{¶4}   At the hearing, Sergeant Michael Hickman of the City of Uhrichsville Police Department testified that on January 7, 2015, he was working the 7:00 p.m. to 3:00 a.m. shift. He testified that he observed appellee fail to use his turn signal as he was turning onto Herrick Street. The officer testified that he was going to stop the vehicle, but it turned into the Sav-A-Lot parking lot. Appellee, who was the driver of the vehicle, exited his vehicle and went into the store.

{¶5} Sergeant Hickman did not follow appellee into the parking lot but rather turned his cruiser around, drove down the road and positioned his vehicle so that he was facing the Sav-A-Lot parking lot. According to him, appellee got back into his vehicle and "shot through the parking lot" out onto Trenton Avenue. Transcript at 6. At the time, it was snowy and icy outside. The posted speed limit on Trenton is 25 miles per hour. Sergeant Hickman testified that he felt that appellee was traveling too fast for the roadway conditions and that he estimated appellee's speed to be between 35 and 40 miles per hour. He testified that appellee agreed with him that he was traveling too fast for the road conditions and above the speed limit. Sergeant Hickman, when asked, stated that he did not recall having any specific training in the academy as to visually estimating speed, but that he learned to do so over 15 years in law enforcement. At approximately 8:25 p.m., the officer stopped appellee's vehicle.

{¶6} On cross-examination, Sergeant Hickman testified that he began his visual estimation of appellee's speed when he was still two blocks away from appellee's vehicle and that he did not clock the vehicle on radar.

{¶7} After the hearing, both sides filed legal memoranda. The trial court, as memorialized in a Judgment Entry filed on October 7, 2015, granted appellee's Motion to Suppress. The trial court, in its Judgment Entry, stated that it was granting the motion because Sergeant Hickman was not qualified to visually estimate speed "without independent verification of the alleged speed for the reason that Sgt. Hickman did not receive training certified by the Ohio Peace Officer Training Academy or a similar organization……, rendering Sgt. Hickman, in this case, unqualified, as a matter of law, to visually estimate the speed of Defendant's vehicle on the night in question." The trial court

held that Sergeant Hickman, therefore, did not have "sufficient probable cause to effectuate the traffic stop" of appellee's vehicle.

{¶8} Appellant now appeals from the trial court's October 7, 2015 Judgment Entry, raising the following assignment of error on appeal:

{¶9} THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS AS SGT. MIKE HICKMAN OF THE UHRICHSVILLE POLICE DEPARTMENT PROVIDED REASONABLE AND ARTICULABLE SUSPICION WARRANTING A STOP OF THE VEHICLE OPERATED BY THE APPELLEE.

I

{¶10} Appellant, in its sole assignment of error, argues that the trial court erred in granting appellee's Motion to Suppress.

{¶11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist. 1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726(4th Dist. 1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the

motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist. 1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist. 1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶12}** Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). Reasonable suspicion constitutes something less than probable cause. *State v. Carlson*, 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist. 1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson*, 76 Ohio St.3d 3, 9, 1996-Ohio-431, 665 N.E.2d 1091. In sum, " ' * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *State v. Adams,* 5th Dist. Licking No. 15 CA 6, 2015–Ohio–3786, ¶ 23, quoting *State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 8.

**{¶13}** In the case sub judice, Sergeant Hickman initiated a traffic stop of appellee's vehicle due to appellee's failure to operate his motor vehicle at a reasonable speed based on the conditions and circumstances on the night in question. At the suppression hearing, Sergeant Hickman testified that he does not have any specialized training in estimating speed.

**{¶14}** We note that officers are statutorily prohibited from arresting or even charging a driver for a speeding violation based upon the officer's "unaided visual estimation of the speed of the motor vehicle." R.C. 4511.091(C)(1). R.C. 4511.091(C) provides in pertinent part:

> No person shall be arrested, charged, or convicted of a violation of any provisions of divisions (B) to (O) of Section 4511.21 or Section 4511.211 of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar.[1]

**{¶15}** In *Miller*, the appellant, who was charged with DUI, was stopped based on officers' unaided visual estimates of speed in slight excess of the speed limit along with the appellant's revving of the engine of a stick shift vehicle while alone at a stop light. The appellant filed a Motion to Suppress, arguing that there was no reasonable and articulable

---

[1] The General Assembly enacted R.C. 4511.091(C) in 2011 in response to the Ohio Supreme Court's holding in *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, which held that a defendant can be convicted of speeding based solely on a police officer's visual estimation of speed where the evidence shows the officer has the proper training and experience. *See State v. Kincaid,* 5th Dist. Ashland No.2012–COA–011, 2012–Ohio–4669, ¶ 19–¶ 22.

suspicion to stop her. This Court, in holding that that the trial court erred in denying her Motion to Suppress, held, in relevant part, as follows at paragraphs 10-14:

We perceive of no reason why revving the engine of a stick shift vehicle while alone at a stop light is "suspicious activity" sufficient to justify the investigative stop of the vehicle. The state points to no law that was violated by that activity. The record contains only the officers unaided visual estimates of speed in slight excess of the speed limit as an additional factor, which taken together with the engine revving the state argues justified further investigation.

The officers are statutorily prohibited from arresting or even charging a driver for a speeding violation based upon the officer's "unaided visual estimation of the speed of the motor vehicle." R.C. 4511.091(C)(1). R.C. 4511.091(C) provides in pertinent part:

No person shall be arrested, charged, or convicted of a violation of any provisions of divisions (B) to (O) of Section 4511.21 or Section 4511.211 of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar.

Thus, the notion that officers may use unaided visual estimates of speed for arrest, charging, and conviction have been superseded and overruled by legislation. Allowing an officer to *stop* a vehicle on their subjective impressions that a vehicle is traveling in slight excess of the legal speed limit may permit officers to do just what the legislature had abolished.

In other words, permitting an investigative stop when the officer cannot arrest or charge based upon his unaided visual estimate of speed in slight excess of the speed limit effectively eliminates any protection against profiling and arbitrary detentions.

Further, that the legislature did not intend to permit investigatory stops of a vehicle on an officer's subjective impressions that a vehicle is traveling in slight excess of the legal speed limit can be found within the specific exception in R.C. 4511.091(C)(1)(c),

(C)(1) * * * This division does not do any of the following:

(c) Preclude a peace officer from testifying that the speed of operation of a motor vehicle, trackless trolley, or streetcar was at a speed greater or less than a speed described in division (A) of section 4511.21 of the Revised Code[2], the admission into evidence of such testimony, or preclude a conviction of a violation of that division based in whole or in part on such testimony.

Accordingly, the legislature has expressly allowed for officers to testify, and for drivers to be convicted upon, unaided visual estimates of speed within a school zone. Had the legislature intended to permit investigatory stops outside the parameters of a school zone, they clearly would have allowed for the exception. (Emphasis added)

---

[2] 4511.21 Speed limits; school zones; modifications

**{¶16}** Based on the foregoing, we find that the trial court did not err in granting appellee's Motion to Suppress.  Sergeant Hickman did not have reasonable and articulable suspicion warranting a stop of appellee's vehicle.

**{¶17}** Appellant's sole assignment of error is, therefore, overruled.

**{¶18}** Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.