[Cite as *State v. Butler*, 2016-Ohio-4836.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                      |
|-------------------------|---|------------------------------|
| STATE OF OHIO           | : | Hon. W. Scott Gwin, P.J.     |
|                         | : | Hon. William B. Hoffman, J.  |
| Plaintiff-Appellee      | : | Hon. Craig R. Baldwin, J.    |
|                         | : |                              |
| -vs-                    | : |                              |
|                         | : | Case No. 2016CA00016         |
| ALAN BUTLER             | : |                              |
|                         | : |                              |
| Defendant-Appellant     | : | O P I N I O N                |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2015CR1249

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 5, 2016

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO
BY: RENEE WATSON                    KENNETH FRAME
Stark County Prosecutor's Office    Stark County Public Defender's Office
110 Central Plaza South             201 Cleveland Ave. S.W.
Canton, OH  44702                   Canton, OH  44702

*Gwin, P.J.*

**{¶1}** Appellant appeals the November 2, 2015 judgment entry of the Stark County Court of Common Pleas overruling his motion to suppress. Appellee is the State of Ohio.

*Facts & Procedural History*

**{¶2}** On September 15, 2015, appellant Alan Butler was charged with one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. Appellant was arraigned on October 9, 2015. On October 15, 2015, appellant filed a motion to suppress and argued there was no reasonable, articulable suspicion for the officer to stop the vehicle in which appellant was a passenger.

**{¶3}** The trial court held a suppression hearing on October 28, 2015. Appellee presented the testimony of Officer Jerrod Goodnight ("Goodnight"). Goodnight is an officer with the Magnolia Police Department. On August 4, 2015, appellant was the passenger in a vehicle Goodnight stopped due to a heavily cracked windshield. Goodnight testified the windshield was cracked approximately one-and-a-half to two feet. The crack started on the driver's side of the window and then continued off the passenger side approximately one-third of the way up from the bottom of the dashboard. When Goodnight pulled behind the vehicle, he could see the crack in the windshield at approximately 1:30 p.m. in the afternoon on a nice August day. Goodnight observed the vehicle traveling south on Elmford Street and, when the vehicle turned onto Broadford Street, he could see the glare go from the left side of the crack all the way to the right side. Goodnight was one or two car lengths behind the vehicle for one block when he saw the crack due to the glare.

{¶4} Goodnight testified a windshield's job is to protect occupants from debris and items that might be a danger or hazard to the occupants or driver and, when cracked, it is no longer safety glass as the integrity of the glass is compromised and the glass could shatter and completely fail in its duty as safety glass because it was compromised. Goodnight stated the cracked windshield was a "heavy safety issue" and that is the reason he stopped the vehicle.

{¶5} Goodnight advised dispatch of his location and the plate number on the car. Dispatch informed Goodnight the owner of the vehicle had an active warrant for his arrest. While Goodnight was in his vehicle communicating with dispatch, Goodnight observed appellant reach down into the front seat. Goodnight stated appellant appeared to be hiding something under or in between the seats with his left hand. Goodnight stated appellant almost laid down in the right front passenger seat. Goodnight testified the Elmford area is an area of high drug activity. When Goodnight returned to the vehicle and inquired of the driver and passenger about appellant's furtive movements, both the driver of the car, who was not the owner of the car, and appellant, told Goodnight that appellant was trying to swat a bee. However, Goodnight did not think appellant's movements were consistent with swatting a bee and Goodnight did not see a bee when he approached the vehicle.

{¶6} Due to appellant's furtive movements, Goodnight wanted to search the area where appellant was seen reaching and thus asked appellant to exit the vehicle. Goodnight conducted a *Terry* pat down of appellant for safety and felt a hard, cylindrical object in appellant's front left pocket. Goodnight thought the object might be a pen knife. However, the object was a four to six inch long metal tube used to smoke crack.

Goodnight then advised appellant of his *Miranda* rights, cuffed him, and placed him under arrest. When Goodnight searched appellant after his arrest, Goodnight found a rock of crack cocaine in appellant's right front pocket. When Goodnight searched the area of the car where appellant was seen reaching, he found a second crack pipe which appellant admitted was his. Goodnight testified there was no video of the traffic stop because there was an error with the SD card and the SD card was corrupt.

{¶7} On cross-examination, Goodnight again confirmed the cracked windshield drew his attention to the vehicle and he first noticed it when he was twenty to thirty yards away from the vehicle. Goodnight stated he felt there was danger to the occupants of the vehicle due to the crack in the windshield. Goodnight testified the crack in the windshield affected the safety of the vehicle. Appellant presented no evidence at the suppression hearing.

{¶8} At the conclusion of the suppression hearing, the trial court overruled appellant's motion. The trial court stated a crack in a windshield approximately one-and-a-half or two feet long is a hazard to the driver of the vehicle and to the driving public in general in that if the window were to give out, the driver and passengers are at risk, as is anybody on the road because of the reactions of the driver when that should happen. The trial court found the stop was necessary given the size of the crack and danger to passengers and the driving public; further, that the vehicle was an unsafe vehicle. The trial court formalized its decision on the motion to suppress in a judgment entry on November 2, 2015.

{¶9} On November 4, 2015, appellant pled no contest to the charge and signed a plea form. The trial court convicted appellant, found him guilty, and ordered a pre-sentence investigation. Appellant was later sentenced to a term of probation.

{¶10} Appellant appeals the November 2, 2015 judgment entry of the Stark County Court of Common Pleas overruling his motion to suppress and assigns the following as error:

{¶11} "I. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS."

{¶12} In his assignment of error, appellant contends the crack in the windshield did not obstruct the driver's view and thus was not unsafe. Accordingly, appellant argues Goodnight had no reasonable, articulable suspicion to justify the traffic stop and thus the trial court erred in denying the motion to suppress.

{¶13} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 726 (4th Dist. 1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim,

an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist. 1994); *State v. Laizure*, 5th Dist. Tuscarawas No. 2015 AP 10 0056, 2016-Ohio-3252. As a general matter, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶14} Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulate suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Adams*, 5th Dist. Licking No. 15 CA 6, 2015-Ohio-3786, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204.

{¶15} In this case, appellant argues the trial court incorrectly decided the ultimate issue. According to appellant, Goodnight had no reasonable, articulable suspicion to stop the vehicle he was riding in because the crack in the windshield did not obstruct the driver's view. Appellant cites this Court's decision in *State v. Kendall*, 5th Dist. Morrow No. 2009-CA-0010, 2010-Ohio-227, and argues this case is analogous to the *Kendall* case.

{¶16} In *Kendall*, a State Highway Patrolman executed a traffic stop of the appellant's vehicle, which had a crack in the windshield, pursuant to R.C. 4315.24 ("no person shall drive any motor vehicle on a street or highway in this state, other than a

motorcycle or a motorized bicycle, that is not equipped with a windshield"). Kendall filed a motion to suppress, arguing the trooper was without reasonable, articulable suspicion to stop the vehicle based upon a cracked windshield. *Id.* At the suppression hearing, the trooper could not recall anything about the crack in the windshield and the trial court was unable to see any crack or other obstruction in the windshield on the videotape of the stop. *Id.* The trial court granted the appellant's motion to suppress. *Id.*

{¶17} In our opinion, we noted the "simple appearance of a crack in a windshield does not give rise to a reasonable suspicion" and "the size and placement of the crack must be sufficient to create a reasonable suspicion that R.C. 4513.02 was being violated." *Id.* We found that, in *Kendall*, since the trooper could not remember anything about the crack in the windshield, since the trial court was unable to see any crack in the videotape of the stop, and due to the lack of testimony on the size and location of the crack in the windshield, the trial court properly granted Kendall's motion to suppress.

{¶18} However, we find the instant case to be distinguishable from *Kendall*. First, Goodnight stopped the vehicle pursuant to R.C. 4513.02, the unsafe vehicle statute, not the section at issue in *Kendall* (R.C. 4315.24) requiring motor vehicles to be equipped with a windshield. Second, unlike in *Kendall*, Goodnight provided detailed testimony about the crack in the windshield. Goodnight testified the windshield in the vehicle was heavily cracked, approximately one-and-a-half to two feet. The crack started on the driver's side of the window and then continued off the passenger side approximately one-third of the way up from the bottom of the dashboard. When Goodnight was behind the vehicle one or two car lengths, he could see the crack in the windshield. Goodnight stated if the windshield were to take another blow, it could possibility shatter and completely fail

in its duty as safety glass. Goodnight testified the cracked windshield was a "heavy safety issue."

{¶19} Rather, we find the instant case is analogous to *State v. Repp*, 5th Dist. Knox No. 01-CA-11, 2001-Ohio-7034. Repp was stopped for driving an unsafe vehicle, i.e. having a cracked windshield, in violation of Mount Vernon Ordinance No. 337.01(A). The language in the Mount Vernon Ordinance mirrors the language in R.C. 4513.02, the statute at issue in this case, and provides that "no person shall drive any vehicle which is in such unsafe condition as to endanger any person." *Id.* In *Repp*, there was evidence the crack in the windshield was large, approximately one to two feet long, and extended into the driver's side of the windshield. *Id.* We found the size and placement of the crack was sufficient to create a reasonable suspicion that R.C. 4513.02 was being violated and the trial court did not err in overruling Repp's motion to suppress.

{¶20} Similarly, in the above-captioned case, Goodnight testified the crack was between one-and-a-half feet to two feet long and extended into the driver's side of the windshield. Further, appellant in this case did not dispute the testimony of Goodnight as to the location or size of the crack and failed to offer any evidence to the contrary. Accordingly, we find the officer had a reasonable, articulable suspicion that the windshield crack had rendered the operation of the vehicle unsafe and in violation of R.C. 4513.02(A). Appellant's assignment of error is overruled.

{¶21} Based on the foregoing, we affirm the November 2, 2015 judgment entry of the Stark County Court of Common Pleas overruling appellant's motion to suppress.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur