[Cite as *State v. Pullin*, 2020-Ohio-787.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| PARNELL JOHN PULLIN | : | Case No. 2019CA00105 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Canton Municipal
Court, Case No. 2019 TRC 1419

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     March 2, 2020

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

BEAU D. WENGER                        JEFFREY JAKIMIDES
218 Cleveland Avenue SW            325 East Main Street
Canton, OH  44702                       Alliance, OH  44601

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Parnell John Pullin appeals the May 20, 2019 judgment of the Canton Municipal Court, Stark County, Ohio which denied his motion to suppress. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 3, 2019 at approximately 1:00 a.m., Stark County Sheriff's Deputy Alan Raber was in the vicinity of the Brick House bar in Canton Township. As he approached the area he noted the vehicle in front of him appeared to be traveling at a speed greater than the posted 35 miles per hour. Raber began pacing the vehicle, using the speedometer in his cruiser. The suspect vehicle accelerated as Raber followed, reaching 39 miles per hour as the driver, later identified as Pullin, approached the Brick House accelerating away from Raber. This concerned Raber as patrons of the bar park on one side of the street and cross the street on foot to access the bar. Due to this fact, there have been numerous car-pedestrian incidents in front of the bar. Before initiating a traffic stop for speeding, Raber ran the plate on the vehicle and determined the registered owner of the vehicle, Pullin, had a suspended operator's license.

{¶ 3} Upon approaching the vehicle, Raber detected a strong odor of alcohol emanating from Pullin. Ultimately Pullin was arrested and charged with speeding, operating a motor vehicle under the influence of alcohol, and driving under suspension.

{¶ 4} Pullin filed a motion to suppress, alleging Raber lacked reasonable suspicion to initiate the stop. On April 29, 2019, a hearing was held on the matter wherein Deputy Raber was the sole witness. After taking the matter under advisement, the trial court overruled Pullin's motion via judgment entry on May 20, 2019. On June 29, 2019,

Pullin entered pleas of no contest to the charges, and was found guilty. The trial court imposed a mandatory fine and jail time, 6 points on Pullin's license and a one year license suspension.

{¶ 5} Pullin filed an appeal and the matter is now before this court for consideration. He raises one assignment of error:

I

{¶ 6} "IN DENYING APPELLANT'S MOTION TO SUPPRESS, THE TRIAL COURT ERRONEOUSLY RELIED ON A DECISION THAT HAD BEEN SUPERSEDED BY THE ENACTMENT OF R.C. 4511.091 (C), WHICH STATES THAT A PEACE OFFICER'S UNAIDED VISUAL ESTIMATION OF THE SPEED OF A MOTOR VEHICLE IS INSUFFICIENT BASIS FOR AN ARREST. IN LIGHT OF THAT ENACTMENT, OHIO COURTS HAVE FOUND THAT PACING METHODS EVEN MORE RIGOROUS THAN THOSE AT ISSUE HERE ARE INSUFFICIENT TO JUSTIFY A TRAFFIC STOP AND HAVE THUS SUPPRESSED EVIDENCE RESULTING FROM SUCH STOPS."

{¶ 7} In his sole assignment of error, Pullin argues that by pacing his car, Deputy Raber did not have sufficient evidence to initiate a traffic stop. Pullin bases his argument on the fact that the trial court relied on outdated and superseded law to arrive at its decision that the traffic stop was warranted. While we agree the trial court relied on case law which has been superseded by statute, we nonetheless find it arrived at the proper conclusion.

{¶ 8} There are three methods of challenging a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact

are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); State v. Klein, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 9} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶ 10} Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20

L.E.2d 889 (1968). Reasonable suspicion constitutes something less than probable cause. *State v. Carlson*, 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist.1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson*, 76 Ohio St.3d 3, 9, 1996-Ohio-431, 665 N.E.2d 1091. In sum, " ' * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *State v. Adams*, 5th Dist. Licking No. 15 CA 6, 2015-Ohio-3786, ¶ 23, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8.

{¶ 11} First, the state argues Pullin has waived any argument regarding the trial court's reliance upon case law superseded by statute. Because the trial court's grounds for denying appellant's motion to suppress were unknown until such a time as the trial court issued its judgment entry, however, we find the matter is properly before us.

{¶ 12} Next, in finding Deputy Raber had reasonable articulable suspicion to initiate a traffic stop of Pullin's vehicle, the trial court relied on two cases. First, this court's decision in *State v. Hammen*, 5th Dist. Stark No. 2012-Ohio-3628 wherein we stated: "Appellant concedes a driver may be stopped for speeding, but challenges the "pacing" method used to determine his speed. * * * [M]any Ohio courts have found that pacing a car is an acceptable manner for determining speed. More specifically, it has been held that: A police officer's visual perception that a motor vehicle was speeding, coupled with years of experience, constitutes specific and articulable facts which provide the police

officer with reasonable grounds to make an investigatory stop." *Id.* ¶ 27, internal citations and quotations omitted.

{¶ 13} The trial court further cited the Supreme Court of Ohio in *City of Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047 which found a police officer's unaided visual estimation of a vehicle's speed, by itself, was sufficient evidence of the vehicle's speed to support a conviction for speeding.

{¶ 14} Effective September 30, 2011, however, the legislature in response to *Jenney* enacted R.C. 4511.091 which prohibits the use of unaided visual estimation of speed in most circumstances. The relevant portion provides:

> No person shall be arrested, charged, or convicted of a violation of any provisions of divisions (B) to (O) of Section 4511.21 or Section 4511.211 of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar. This division does not do any of the following:
>
> Preclude the use by a peace officer of a stopwatch, radar, laser, or other electrical, mechanical, or digital device to determine the speed of a motor vehicle;
>
> * * *

{¶ 15} In 2012 we examined the statute in *State v. Miller*, 5th Dist. No. 2005CA25, 2012-Ohio-6147. In that matter, the basis for the traffic stop was appellant revving the engine of a stick-shift vehicle and an unaided estimation of speed. We found revving an

engine was an insufficient basis for an investigatory stop. We then turned to the officer's unaided visual estimation of the appellant's speed, referenced R.C. 4511.091(C)(1) and noted at paragraph 12:

> Thus, the notion that officers may use unaided visual estimates of speed for arrest, charging, and conviction have been superseded and overruled by legislation. Allowing an officer to stop a vehicle on their subjective impressions that a vehicle is traveling in slight excess of the legal speed limit may permit officers to do just what the legislature had abolished. In other words, permitting an investigative stop when the officer cannot arrest or charge based upon his unaided visual estimate of speed in slight excess of the speed limit effectively eliminates any protection against profiling and arbitrary detentions.

{¶ 16} We concluded under the facts in *Miller*, that the "officers intruded upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches. *Terry*, 392 U.S. at 22, 88 S.Ct. 1868, 20 L.Ed.2d 889. And simple good faith on the part of the arresting officer is not enough. * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects, only in the discretion of the police." *Miller* at ¶ 15 internal quotations and citations omitted.

{¶ 17} The facts here, however, are distinguishable. The estimation of speed in this matter was not unaided. Rather, Deputy Raber paced appellant's vehicle as he had

been taught in during his OPATA traffic training, as he had practiced during field training, and as used in his day-to-day traffic enforcement during his two plus years with the sheriff's department.  T. 7-10. Raber explained he used the speedometer in his cruiser, a mechanical device, as he followed Pullin and noted Pullin's speed accelerated from 36 to 39 miles per hour as he followed, and as appellant approached the Brick House bar. T. 11.

{¶ 18} In support of his argument that pacing is inadequate to justify a traffic stop, Pullin relies on *State v. Jarosz*, 11th Dist. Portage No. 2013-P-0050, 2013-Ohio-5839. *Jarosz*, however, is distinguishable from the instant matter. As pointed out by the state, the *Jarosz* court upheld the trial court's decision granting appellant's motion to suppress not based on a finding that pacing is an invalid method of determining the speed of another vehicle, but rather based on the trial court's finding that the testimony of the law enforcement officer involved lacked credibility vis-à-vis video from his cruiser camera. *Jarosz* at ¶ 21.

{¶ 19} What is more, we have previously found reasonable, in *State v. Hammen*, 5th Dist. No. 2012CA00009, 2012-Ohio-3628, a trial court's finding that a defendant was speeding when the defendant outpaces a law enforcement officer utilizing pacing as a measure of the speed of a defendant's vehicle. Here Pullin was doing just that. His speed increased from 36 to 39  miles per hour as Deputy Raber followed him, with Raber needing to increase his speed to maintain a two-car length distance between himself and Pullin over a quarter mile. T. 11.

{¶ 20} We find Deputy Raber had reasonable articulable suspicion to initiate a traffic stop based on the fact that Pullin was exceeding the posted speed of 35 miles per hour. The sole assignment of error is overruled.

{¶ 21} The judgment of the Canton Municipal Court denying appellant's motion to suppress is affirmed.


By Wise, Earle, J.

Hoffman, P.J. and

Gwin, J. concur.


EEW/rw