[Cite as *State v. Ratliff*, 2020-Ohio-3315.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-09-163 |
| | : | O P I N I O N |
| - vs - | | 6/15/2020 |
| | : | |
| DEBORAH LEE RATLIFF, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CRI2018-11-2058

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Deborah Lee Ratliff, appeals the decision of the Butler County Court of Common Pleas denying her motion to suppress after she was arrested and charged with operating a motor vehicle while under the influence of alcohol ("OVI"). For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} On January 30, 2019, the Butler County Grand Jury returned an indictment

charging Ratliff with one count of OVI in violation of R.C. 4511.19(A)(1)(a), one count of OVI in violation of R.C. 4511.19(A)(1)(d), both third-degree felonies, and one count of driving under OVI suspension in violation of R.C. 4510.14(A), a first-degree misdemeanor. The charges arose after Officer Matt Kellum with the Fairfield Police Department initiated a traffic stop of Ratliff's vehicle at approximately 12:15 a.m. on the morning of November 15, 2018. The traffic stop occurred while Ratliff and Officer Kellum were traveling northbound on Pleasant Avenue towards the city of Hamilton. Following this traffic stop, Ratliff was placed under arrest and transported back to the Fairfield Police Department where she submitted to a breathalyzer test that showed her blood-alcohol content was .167, over twice the legal limit of .08.

{¶ 3} On March 27, 2019, Ratliff filed a motion to suppress. In support of her motion, Ratliff argued Officer Kellum did not have reasonable suspicion to initiate an investigative traffic stop of her vehicle. After holding a hearing on the matter, the trial court disagreed and denied Ratliff's motion to suppress. In so holding, the trial court determined that, based on the totality of the circumstances, it was "appropriate" for Officer Kellum to initiate an investigative traffic stop of Ratliff's vehicle "in this particular matter." The trial court based its decision on Officer Kellum's testimony that Ratliff had been speeding just prior to him initiating the stop. This was in addition to Officer Kellum's testimony that he observed Ratliff driving erratically "sway[ing] from one side to the other side of the lane" nearly striking the curb on multiple occasions.

**Appeal**

{¶ 4} Ratliff now appeals the trial court's decision denying her motion to suppress, raising one assignment of error for review. In her single assignment of error, Ratliff argues the trial court erred by finding Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of her vehicle. We disagree.

- 2 -

**Standard of Review**

{¶ 5} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. "Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 17, citing *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. That is to say, as a general matter, "'determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.'" *Columbus v. Ellyson*, 10th Dist. Franklin No. 05AP-573, 2006-Ohio-2075, ¶ 4, quoting *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657 (1996).

{¶ 6} "Ohio recognizes two types of lawful traffic stops." *State v. Stover*, 12th Dist. Clinton No. CA2017-04-005, 2017-Ohio-9097, ¶ 8, citing *State v. Campbell*, 12th Dist. Butler Nos. CA2014-02-048 and CA2014-02-051, 2014-Ohio-5315, ¶ 25. The first type of lawful traffic stop "involves a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation." *State v. Egnor*, 12th Dist. Warren No. CA2019-05-042, 2020-Ohio-327, ¶ 17; *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31. The second type of lawful traffic stop "is an investigative

stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based on specific or articulable facts that criminal behavior is imminent or has occurred." *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

{¶ 7}   As noted above, Ratliff challenges the trial court's decision finding Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of her vehicle.  While the concept of "reasonable and articulable suspicion" has not been precisely defined, "[t]he reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest."  *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989).  The determination of whether an officer had reasonable suspicion to initiate an investigative stop "must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'"  *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).  This means "[t]he reasonable-suspicion determination must be 'based on the *collection* of factors, not on the individual factors themselves.'"  (Emphasis sic.)  *Id.* at ¶ 15, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 19.

**Suppression Hearing**

{¶ 8}   Officer Kellum, the only witness to testify regarding the traffic stop of Ratliff's vehicle, testified that he was driving northbound on Pleasant Avenue towards the city of Hamilton at approximately 12:15 a.m. on the morning of November 15, 2018.  At that time, Officer Kellum testified that he saw Ratliff's vehicle directly in front of him and "could tell" that she was traveling over the posted 35 mph speed limit.  According to Officer Kellum, Pleasant Avenue was at that time wet, it was cold, and "[w]e had some rain that was changing over to sleet or what I consider like small ice pellets.  It was definitely a winter

- 4 -

weather condition night."

{¶ 9} When asked how he could tell Ratliff was speeding, Officer Kellum testified that his training, education, and experience as a police officer for over 13 years allowed him to "make an estimation based on [his] speed relative to [Ratliff's] speed." Explaining further how he made this estimation, Officer Kellum testified that he knew Ratliff was speeding because Ratliff was "still pulling away from [him]" and "continued to accelerate away from [him] at a higher rate of speed" when he got within "two or three car lengths" of her vehicle while he was "traveling at 48 to 52" mph in order to "catch up" with her.

{¶ 10} Officer Kellum also testified that Ratliff was "not able to maintain" her lane of travel, that she was "swaying from [one] side of the lane to the other side of the lane and continuing with the speed, as well," "bordering the right-hand side of the roadway," which caused her to nearly strike the curb "several" times. Testifying further, Officer Kellum stated:

> So the speed is what originally caught my attention to [Ratliff], and once I positioned my vehicle to her vehicle, [Ratliff] was unable to maintain that lane. So as [Ratliff] was traveling in that lane, she was bouncing from side to side to side, more or less staying on the right-hand side near the curb, almost striking the curb.

**Analysis**

{¶ 11} Ratliff initially argues the trial court erred by denying her motion to suppress when considering the language found in R.C. 4511.091(C)(1), which provides:

> No person shall be arrested, charged, or convicted of a violation of any provision of divisions (B) to (O) of section 4511.21 [speed limits on public roadways] or section 4511.211 [speed limits on a private residential road or driveway] of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar.

{¶ 12} To support this claim, Ratliff cites to the Fifth District Court of Appeals'

decision in *State v. Laizure*, 5th Dist. Tuscarawas No. 2015 AP 10 0056, 2016-Ohio-3252, which in turn cites to an earlier Fifth District decision in *State v. Miller*, 5th Dist. Fairfield No. 2012-CA-25, 2012-Ohio-6147.

{¶ 13} In *Miller*, the appellant was stopped based on a police officer's unaided visual estimate of her vehicle's speed, as well as appellant revving her vehicle's engine while she was stopped at a traffic signal "for approximately 2 seconds." *Id*, at ¶ 3. Following the stop of her vehicle, appellant was charged with OVI in violation of R.C. 4511.19(A)(1)(a). *Id.* Appellant moved to suppress, arguing the arresting officer lacked a reasonable suspicion to conduct an investigative traffic stop of her vehicle. *Id.*, 2012-Ohio-6147 at ¶ 4. The trial court disagreed and denied appellant's motion. Appellant then appealed.

{¶ 14} On appeal, the Fifth District reversed the trial court's decision denying appellant's motion to suppress. In so holding, the Fifth District relied on the language found in R.C. 4511.091(C)(1) and held:

> [T]he notion that officers may use unaided visual estimates of speed for arrest, charging, and conviction have been superseded and overruled by legislation [in accordance with R.C. 4511.091(C)(1)]. Allowing an officer to *stop* a vehicle on their subjective impressions that a vehicle is traveling in slight excess of the legal speed limit may permit officers to do just what the legislature had abolished. In other words, permitting an investigative stop when the officer cannot arrest or charge based upon his unaided visual estimate of speed in slight excess of the speed limit effectively eliminates any protection against profiling and arbitrary detentions.

(Emphasis added.) *Id.* at ¶ 12.

{¶ 15} Similar to *Miller*, in *Laizure*, the appellee was stopped based on a police officer's unaided visual estimate of his vehicle's speed.[1] *Id.*, 2016-Ohio-3252 at ¶ 13.

---

1. We note that the facts in *Laizure* indicate appellee also "fail[ed] to use his turn signal as he was turning onto Herrick Street." *Id.*, 2016-Ohio-3252 at ¶ 4. A driver's failure to properly use his or her turn signal is a violation of R.C. 4511.39(A). This court has held that reasonable suspicion exists to conduct a traffic stop of a vehicle where the driver fails to properly use his or her turn signal in violation of that statute. *See State v.*

Following the stop of his vehicle, appellee was arrested and charged with improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (I), as well as trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(a). *Id.* at ¶ 2. Appellee filed a motion to suppress, arguing the arresting officer lacked reasonable suspicion to conduct an investigative traffic stop of his vehicle. *Id.* at ¶ 3. The trial court agreed and granted appellee's motion. *Id.* at ¶ 7. The state then appealed.

{¶ 16} On appeal, the Fifth District affirmed the trial court's decision to grant appellee's motion to suppress. In reaching this decision, the Fifth District relied on *Miller* to hold "officers are statutorily prohibited from arresting or even charging a driver for a speeding violation based upon the officer's 'unaided visual estimation of the speed of the motor vehicle.'" *Id.* at ¶ 14, citing R.C. 4511.091(C)(1).

{¶ 17} When considering R.C. 4511.091(C)(1)(b) specifically states that the language found in R.C. 4511.091(C)(1) does not "[a]pply regarding any violation other than a violation of divisions (B) to (O) of section 4511.21 [speed limits on public roadways] or section 4511.211 [speed limits on a private residential road or driveway] of the Revised Code or a substantially similar municipal ordinance," we question whether R.C. 4511.091(C)(1) is applicable to the case at bar.

{¶ 18} However, even assuming the language found in R.C. 4511.091(C)(1) did apply, the record is clear that Officer Kellum did not initiate a traffic stop of Ratliff's vehicle based on an "unaided visual estimation" of its speed. Officer Kellum instead used the speedometer in his police cruiser, a mechanical device, to "pace" Ratliff's vehicle while it was directly in front of him on Pleasant Avenue. Therefore, rather than the Fifth District's decisions in *Laizure* and *Miller* where an "unaided visual estimation" of a vehicle's speed

---

*Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 25. The Fifth District, however, never mentions this traffic violation again in its analysis.

was used to justify a traffic stop, we find this case is more akin to the Fifth District's more recent decision in *State v. Pullin*, 5th Dist. Stark No. 2019CA00105, 2020-Ohio-787 where, as here, the estimation of appellant's speed was aided by the use of a mechanical device, i.e., a speedometer.

{¶ 19} In *Pullin*, a sheriff's deputy initiated a traffic stop of appellant's vehicle after the deputy "paced" appellant's vehicle and determined that appellant was traveling above the posted 35 mph speed limit. *Id.* at ¶ 17. As the deputy explained, "he used the speedometer in his cruiser, a mechanical device, as he followed [appellant] and noted [appellant's] speed accelerated from 36 to 39 miles per hour as he followed, and as appellant approached" a local bar. *Id.*

{¶ 20} Unlike in both *Laizure* and *Miller*, the estimation of appellant's speed in *Pullin* was not an "unaided visual estimation" that is prohibited by R.C. 4511.091(C)(1). The deputy's estimation was instead aided by the use of a mechanical device, i.e., a speedometer. R.C. 4511.091(C)(1) does not apply where a "stopwatch, radar, laser, or other electrical, mechanical, or digital device" is used to determine a vehicle's speed. R.C. 4511.091(C)(1)(a). Therefore, finding the deputy "had reasonable articulable suspicion to initiate a traffic stop based on the fact that [appellant] was exceeding the posted speed of 35 miles per hour," the Fifth District in *Pullin* affirmed the trial court's decision to deny appellant's motion to suppress. *Id.*, 2020-Ohio-787 at ¶ 20.

{¶ 21} In this case, just like in *Pullin*, Officer Kellum testified that he saw Ratliff's vehicle directly in front of him and "could tell" that she was traveling above the posted 35 mph speed limit. When asked how he could tell Ratliff was speeding, Officer Kellum testified that his training, education, and experience as a police officer for over 13 years allowed him to "make an estimation based on [his] speed relative to [Ratliff's] speed." Explaining further how he made this estimation, Officer Kellum testified that he knew Ratliff was speeding

because she was "still pulling away from [him]" and "continued to accelerate away from [him] at a higher rate of speed" when he got within "two or three car lengths" behind her vehicle while he was traveling between "48 mph to 52" mph in order to "catch up" with her.

{¶ 22} The "pacing" method used by Officer Kellum in this case is the exact same method used by the deputy in *Pullin* to determine whether the appellant was speeding in that case. This court has already determined that "pacing" is an acceptable manner for determining a vehicle's speed. *See State v. Vang*, 12th Dist. Madison No. CA2018-06-017, 2019-Ohio-195, ¶ 11 (traffic stop was valid where a sergeant "was able to determine [appellant's] speed by pacing [appellant's] car with his own patrol car"). Therefore, just as the Fifth District found in *Pullin*, Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of Ratliff's vehicle for speeding.

{¶ 23} This holds true irrespective of whether Ratliff also committed a marked lane violation. *See, e.g., State v. Lumbus*, 8th Dist. Cuyahoga No. 102273, 2016-Ohio-380, ¶ 19-21 (officer had reasonable suspicion to initiate an investigate traffic stop of appellant's vehicle where the officer paced appellant's vehicle and determined appellant was speeding). "A police officer's observation of a person violating a traffic law is sufficient to give rise to the officer's reasonable conclusion that the person is engaged in criminal activity." *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 11. "Consequently, an officer who reasonably suspects that a traffic violation has occurred need not determine whether a driver's conduct might be excused before initiating a traffic stop." *State v. Rubsam*, 9th Dist. Medina No. 18CA0089-M, 2019-Ohio-2153, ¶ 8, citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 16-17. That is to say, "[a]n officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Mays* at ¶ 17.

{¶ 24} Nevertheless, while we find it dispositive that Officer Kellum had reasonable

suspicion to initiate an investigative traffic stop of Ratliff's vehicle for speeding, we note that, "depending on the circumstances, erratic driving that does not amount to a traffic violation may, nonetheless, support an officer's reasonable suspicion to stop a driver." *State v. Bahen*, 10th Dist. Franklin No. 26AP-65, 2016-Ohio-7012, ¶ 23, citing *Dumas v. Registrar, Bur. of Motor Vehicles*, 10th Dist. Franklin No. 88AP-765, 1989 Ohio App. LEXIS 1654 (May 4, 1989) (erratic driving "provided a reasonable basis to investigate the cause of such driving although it may not have risen to the level of a commission of a traffic offense"); *Chagrin Falls v. Bloom*, 8th Dist. Cuyahoga No. 101686, 2015-Ohio-2264, ¶ 9 (an officer has a duty to investigate erratic driving in order to protect the public and the driver even if a traffic infraction is not observed). This may include circumstances where a driver is observed weaving within his or her lane of traffic during the early morning hours. *See, e.g., Montpelier v. Lyon*, 6th Dist. Williams No. WMS-86-16, 1987 Ohio App. LEXIS 6589, *3 (May 1, 1987) (officers had reasonable suspicion to initiate an investigative traffic stop of appellant's vehicle where they observed appellant "weaving within his lane during the early morning hours").

{¶ 25} Here, not only was Ratliff speeding, Officer Kellum testified that Ratliff was also "not able to maintain" her lane of travel, that she was "swaying from [one] side of the lane to the other side of the lane and continuing with the speed, as well," and "bordering the right-hand side of the roadway," which caused her to nearly strike the curb "several" times. When considering Officer Kellum made these observations at approximately 12:15 a.m. at a time when the roadway was wet, it was cold, and there was rain changing over to sleet, this provides further support for the trial court's decision finding Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of Ratliff's vehicle. This is because, as noted above, "depending on the circumstances, erratic driving that does not amount to a traffic violation may, nonetheless, support an officer's reasonable suspicion to

stop a driver." *Bahen*, 2016-Ohio-7012 at ¶ 23.

## Conclusion

{¶ 26} The trial court did not err by denying Ratliff's motion to suppress. Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of Ratliff's vehicle based on the fact that Ratliff was exceeding the posted 35 mph speed limit. Ratliff was also observed driving erratically by "bouncing from side to side to side, more or less staying on the right-hand side near the curb, almost striking the curb" at approximately 12:15 a.m. when the roadway was wet, it was cold, and there was rain changing over to sleet. When considering the totality of the circumstances, this provides further support for the trial court's decision finding Officer Kellum had reasonable suspicion to initiate an investigative traffic stop of Ratliff's vehicle. Therefore, finding no error in the trial court's decision denying Ratliff's motion to suppress, Ratliff's single assignment of error lacks merit and is overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.