**[Cite as *State v. Foster*, 2023-Ohio-1434.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 5-22-26

    v.

TREMELL D. FOSTER,                O P I N I O N

    DEFENDANT-APPELLANT.

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 5-22-27

    v.

TREMELL D. FOSTER,                O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeals from Hancock County Common Pleas Court**
**Trial Court Nos. 2021 CR 0014 and 2021 CR 0164**

**Judgments Affirmed**

**Date of Decision: May 1, 2023**

---

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Phillip A. Riegle* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Tremell D. Foster ("Foster"), brings these appeals from the August 9, 2022, judgments of the Hancock County Common Pleas Court sentencing him to prison after he was convicted by a jury of two separate felony OVI offenses. On appeal, Foster argues that his convictions were against the manifest weight of the evidence, that the trial court erred by denying his suppression motions, that the trial court erred by granting the State's motion to join the cases for trial, and that the trial court erred by rejecting the parties' plea agreement. For the reasons that follow, we affirm the judgments of the trial court.

*Background*

{¶2} On January 12, 2021, Foster was indicted in trial court case 2021-CR-14 for OVI in violation of R.C. 4511.19(A)(1)(a), a felony of the third degree due to Foster having a prior felony conviction of R.C. 4511.19(A). The indictment also contained a specification pursuant to R.C. 2941.1413 alleging that Foster had 5 or more equivalent offenses within 20 years of committing the offense. Foster pled not guilty to the charge.

{¶3} On May 18, 2021, Foster was indicted in trial court case 2021-CR-164 for another OVI offense that occurred while Foster was released on bond on trial court case 2021-CR-14. The indictment for the May 2021 OVI was for the same charge as the January 2021 case and the new indictment contained the same

specification. In fact, the May 2021 charge actually involved the same arresting officer as the January 2021 charge. Foster pled not guilty to the new charge.

**{¶4}** Foster filed suppression motions in both cases, which were heard and ultimately overruled by the trial court. Foster then proceeded to a consolidated jury trial on July 5-6, 2022, wherein the jury found Foster guilty of both OVI charges and the accompanying specifications.

**{¶5}** Foster was sentenced to serve 24 months in prison on the January 2021 OVI and a consecutive 2-year prison term on the attached specification. As to the May 2021 OVI, Foster was sentenced to serve 36 months in prison on the OVI charge, and a consecutive 3-year prison term on the attached specification. Judgment entries memorializing Foster's sentences were filed in both cases on August 9, 2022. Foster now brings the instant appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Because the jury lost its way and created a manifest miscarriage of justice in finding Appellant guilty, Appellant's convictions, in both case numbers 2021 CR 00014 and 2021 CR 00164, were against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**Because the trial court's factual findings were against the manifest weight of the evidence, and its ultimate legal conclusions were in error, the trial court erred in denying Appellant's Motions to Suppress in both case numbers 2021 CR 00014 and 2021 CR 00164, in violation of Appellant's right against unreasonable searches and seizures under the Fourth and**

**Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.**

**Assignment of Error No. 3**
**Because Appellant was severely prejudiced as a result of joinder, the trial court was provided with the evidence needed to properly weigh considerations of joinder and Appellant's right to a fair trial, and the trial court abused its discretion in granting joinder in light of the information with which it was presented, the trial court abused its discretion in consolidating case numbers 2021 CR 00014 and 2021 CR 00164 for purposes of trial, in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution.**

**Assignment of Error No. 4**
**Because the trial court acted in an arbitrary, unconscionable, and unreasonable manner in refusing to accept the plea agreement between the State and Appellant, the trial court's refusal to accept the plea agreement was an abuse of discretion, and a violation of Appellant's right to Due Process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶6} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶7} In his second assignment of error, Foster argues that the trial court erred by denying his suppression motions in both cases. We will address each suppression motion separately below.

Standard of Review

{¶8} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*; *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

Suppression Motion in case 2021-CR-14

{¶9} Foster filed a suppression motion in trial court case 2021-CR-14 arguing, *inter alia*, that the trooper who stopped his vehicle lacked sufficient grounds to initiate a traffic stop, that there were insufficient grounds to extend the traffic stop, and that the trooper lacked probable cause to arrest him. The trial court held a full hearing on the matter wherein the following evidence was presented.

{¶10} On January 2, 2021, at approximately 10:42 p.m., Trooper David Lopez of the Ohio State Highway Patrol was in his marked cruiser tracking the speed

of southbound travelers on I-75. Using his "laser," Trooper Lopez observed a vehicle traveling 83, 80, and 79 mph in the 70 mph speed zone. At that time, Trooper Lopez "made a conscious decision" to stop the vehicle, so he pulled out from his location to catch up with the vehicle, but he did not immediately activate his overhead lights to initiate a traffic stop. (Oct. 13, 2021, Tr. at 71).

{¶11} Trooper Lopez caught up to the vehicle and followed it as the vehicle took an exit ramp onto County Road 99. When the vehicle turned left onto County Road 99, Trooper Lopez observed the vehicle travel halfway into the right lane, dividing two lanes of travel. Nevertheless, Trooper Lopez indicated he did not activate his overhead lights to stop the vehicle until after they crossed the overpass.

{¶12} Once Trooper Lopez activated his overhead lights to initiate a traffic stop, he followed the vehicle as it pulled into a nearby Speedway.[1] The vehicle ultimately stopped partially on top of a dividing line between parking spots at the Speedway. Trooper Lopez parked behind the vehicle, then approached and identified Foster as the driver.

{¶13} While interacting with Foster, Trooper Lopez detected a strong odor of an alcoholic beverage. He also noticed that Foster's eyes were bloodshot and glassy, and that Foster's speech was slurred. As a result of his observations, Trooper Lopez asked Foster to step out of the vehicle and speak with him in the front seat of

---

[1] Trooper Lopez testified that it was not unusual for vehicles that he stopped in that area to proceed to the Speedway.

his cruiser. During that conversation, Foster admitted to drinking two beers and a shot, though it was not clear when exactly he had done so. Nevertheless, as they conversed, Trooper Lopez again detected the odor of an alcoholic beverage specifically emanating from Foster's breath. He also noted the continued slurred speech of Foster, and Foster's bloodshot/glassy eyes.

{¶14} As a result of the interaction, Trooper Lopez had Foster perform field sobriety tests. Trooper Lopez had Foster perform the HGN test, detecting six of six clues of impairment. Additionally, while Trooper Lopez was conducting the test, Foster stated, "you already know." (*Id*. at 109).

{¶15} After the HGN test, Trooper Lopez began to instruct Foster on the walk-and-turn test; however, as Trooper Lopez was explaining the test, Foster indicated he had an urgent need to urinate. Trooper Lopez indicated Foster needed to wait until the tests were complete first. Foster continued to emphasize his need to urinate throughout the rest of his interaction with Trooper Lopez.

{¶16} Although Foster maintained his need to urinate, Trooper Lopez had Foster perform the walk-and-turn test, wherein Trooper Lopez detected 6 of 8 clues of impairment. He then had Foster perform the one-leg stand test and he detected 3 of 4 clues of impairment. Based on all of his observations of Foster, Trooper Lopez arrested Foster for OVI. Foster was offered a chemical breath test but he refused.

**{¶17}** Based on all of the evidence presented, the trial court overruled Foster's suppression motion. The trial court filed a written entry making findings of fact and conclusions of law, ultimately determining, *inter alia*, that Trooper Lopez had sufficient grounds to initiate a traffic stop, to perform field sobriety tests, and that Trooper Lopez had probable cause to arrest Foster.

**{¶18}** Foster now argues that the trial court erred by overruling his suppression motion, specifically contending that certain factual findings made by the trial court were not supported by the record. He argues that the trial court also erroneously concluded that Trooper Lopez had reasonable suspicion to stop Foster, and that Trooper Lopez lacked probable cause to arrest Foster for OVI.

**{¶19}** In reviewing Foster's arguments, we emphasize that the record clearly supports Trooper Lopez having a reasonable suspicion to stop Foster based on his observation of Foster exceeding the speed limit. *State v. Pullin*, 5th Dist. Stark No. 2019CA00105, 2020-Ohio-787, ¶ 20; *see also State v. Gartrell*, 3d Dist. Marion No. 9-14-12, 2014-Ohio-5203, ¶ 55. Thus we find no error here with the trial court's determination to overrule his suppression motion on this issue.

**{¶20}** As to Foster's claim that Trooper Lopez lacked probable cause to arrest him for OVI, Trooper Lopez specifically identified the numerous reasons why he arrested Foster for OVI, and the trial court found, based on the totality of the circumstances, that Trooper Lopez had probable cause to arrest Foster. We find no

error with the trial court's determination. In fact, while Foster argues that the video evidence showed his speech was not slurred, the video actually establishes that Foster's speech is plainly slurred and Foster can also be observed driving between lanes when making a left-hand turn onto County Road 99. Thus while Foster argues that Trooper Lopez was not credible, the video actually corroborates Trooper Lopez's testimony.

{¶21} Given all the facts in the record, such as Trooper Lopez's observations of Foster, Foster's admission to drinking, Foster's statement "you already know," and Foster's performance on the field sobriety tests, we do not find any error here with the trial court's determination that Trooper Lopez had probable cause to arrest Foster for OVI. *See State v. Lewis*, 3d Dist. Auglaize No. 2-16-13, 2017-Ohio-996, ¶ 13. Thus after reviewing the record, Foster's contention that the trial court erred by denying his suppression motion in trial court case 2021-CR-14 is overruled.

Suppression Motion in case 2021-CR-164

{¶22} Foster filed a suppression motion in trial court case 2021-CR-164 arguing, *inter alia*, that Trooper Lopez lacked sufficient grounds to detain him on May 10, 2021, and that Trooper Lopez lacked probable cause to arrest him for OVI. A hearing was held on the matter wherein the following evidence was presented.

{¶23} On May 10, 2021, Trooper Lopez was on patrol in Findlay shortly after 1:30 a.m. While driving, he observed a black BMW parked in the front yard of

a residential home. The BMW was running, the driver's-side door was open, and music was playing loudly. Trooper Lopez thought the situation was unusual, so he watched the vehicle while he was in the area.

{¶24} After a couple of minutes, the BMW left the yard in which it was parked, traveled up the road, and parked in the yard of another residence. Trooper Lopez observed a black male get out of the vehicle, walk around it, and get back inside. Trooper Lopez then observed the vehicle travel back to the original residence it was parked in front of, again parking in the front yard.

{¶25} Findlay Police Officers were in the area investigating a noise complaint, and Trooper Lopez made contact with them while he was observing the black BMW. The Findlay officers approached the black male who was outside of the BMW and spoke with him. As the Findlay officers were finishing speaking to the man, Trooper Lopez approached and recognized the individual as Foster.

{¶26} Trooper Lopez indicated that Foster had a strong odor of an alcoholic beverage emanating from his breath. He also noticed that Foster's eyes were bloodshot, glazed, and glassy. Further, there was a slur/congestion to Foster's words.

{¶27} Trooper Lopez attempted to have Foster perform field sobriety tests, but Foster would not follow instructions. Foster claimed that he was not driving the black BMW, that he was in his own yard, and that he felt he could not be arrested

in his own yard. Trooper Lopez explained that he had observed Foster driving the black BMW and that he had observed Foster park in multiple yards, so he wanted Foster to perform field sobriety tests. When Foster refused to comply, Foster was arrested for OVI.

{¶28} Based on all of the evidence presented, the trial court overruled Foster's suppression motion. The trial court filed a written entry making findings of fact and conclusions of law, ultimately determining, *inter alia*, that Trooper Lopez had sufficient grounds to stop Foster, to detain him, and that Trooper Lopez had probable cause to arrest Foster.

{¶29} Foster now argues that the trial court erred by overruling his suppression motion, contending that the trial court improperly determined that Trooper Lopez discerned clues that were strongly suggestive of inebriation, and that the trial court erred by determining that Trooper Lopez had probable cause to arrest Foster.

{¶30} Contrary to Foster's arguments, Trooper Lopez testified to his observations of Foster's odd behavior, which consisted of parking in multiple yards after 1:30 a.m. while listening to loud music. Trooper Lopez testified that Foster had a strong odor of an alcoholic beverage emanating from his person, that his speech was slurred, and that his eyes were bloodshot/glassy. The video from the scene entered into evidence corroborates Trooper Lopez's testimony, in that Foster's

speech was slurred and he was combative when it came to performing field sobriety tests. Given all the evidence in the record, and giving deference to the factual findings of the trial court, which are supported by the record, we do not find that the trial court erred by denying Foster's suppression motion in trial court case 2021-CR-164. Therefore, Foster's second assignment of error is overruled.

*First Assignment of Error*

**{¶31}** In Foster's first assignment of error, he argues that his OVI convictions in both cases were against the manifest weight of the evidence.

Standard of Review

**{¶32}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶33}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight

standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Analysis

**{¶34}** In arguing that his convictions were against the manifest weight of the evidence, Foster contends that the evidence did not establish that he was intoxicated during either incident, that the videos of the traffic stops weighed against findings that he was impaired in both cases, and that Trooper Lopez was not a reliable witness. In addition, he argues that with respect to the January 2021 case, the results from the field sobriety tests were compromised by Foster's urgent need to urinate. With respect to the May 2021 case, Foster argues that there were no field sobriety tests to corroborate any level of intoxication.

**{¶35}** At the outset of our review, we emphasize that all of the arguments that Foster makes, and all of the "flaws" that he contends are in the State's case, were presented to the jury for consideration, and they were evidently rejected by the jury. Moreover, the jury was able to see and observe Trooper Lopez's testimony and compare his testimony with the video of both incidents. Credibility is primarily a matter for the trier-of-fact. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶36} With respect to the January 2021 OVI, Trooper Lopez's observations are supported by Foster's statements at the scene and by the video of the incident. With respect to the May 2021 OVI, Trooper Lopez's testimony was further supported by a witness who testified that it was her yard Foster had stopped in on the night in question. She testified that Foster wanted her fiancé to come outside and drink with him. This testimony defeated Foster's claims that he was not the individual driving the black BMW that was parking in people's yards.

{¶37} On the whole, these are simply not cases where the evidence weighs heavily against the convictions, which is required for a reversal. *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9. Therefore, Foster's first assignment of error is overruled.

### *Third Assignment of Error*

{¶38} In his third assignment of error, Foster argues that the trial court abused its discretion by joining his two OVI cases for purposes of trial.

### Standard of Review

{¶39} We review a trial court's determination on joinder issues under an abuse of discretion standard. *State v. Lucas*, 3d Dist. Allen Nos. 1-21-53, 1-21-54, 1-21-55, 2022-Ohio-3278, ¶ 48. An abuse of discretion is more than an error in judgment; it suggests that the decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

Relevant Authority

**{¶40}** "The law favors joining multiple criminal offenses in a single trial." *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). This is because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225 (1980).

**{¶41}** Notwithstanding the policy favoring joinder, a trial court should not order joinder where the defendant will be prejudiced. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 49. To obtain severance pursuant to Crim.R. 14, the *accused* bears "the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial[.]" *State v. Torres*, 66 Ohio St.2d 340, 343 (1981), syllabus.

**{¶42}** However, the State can "refute a defendant's claim of prejudicial joinder" by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid.R. 404(B) (the "other acts" test); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct (the "joinder test"). *State v. Powell*, 8th Dist. Cuyahoga No.

107276, 2019-Ohio-4345; *Franklin* at 122. Importantly, the two tests are disjunctive—the satisfaction of one negates an accused's claim of prejudice *without consideration of the other*. *State v. Truss*, 10th Dist. Franklin No. 18AP-147, 2019-Ohio-3579, ¶ 17.

Analysis

{¶43} After the State filed a motion to consolidate the two OVI cases against Foster for purposes of trial, the matter was discussed at the final pretrial hearing. Defense counsel strongly objected to consolidation, arguing that it was "human nature" for a jury to have difficulty separating multiple identical charges, particularly given the stipulations that would be entered to the 5 prior equivalent OVI offenses for purposes of the specification. The defense contended that the jury would make improper "propensity" inferences.

{¶44} The State countered that in this unusual circumstance, the same officer arrested Foster for both OVIs, thus judicial efficiency would be vastly increased by holding a single trial. Further, the State argued that the evidence from each charge was simple and direct.

{¶45} The trial court agreed with the State, emphasizing that the law favors joinder and that this case had "the unique common factor" of the same arresting officer. Further, the trial court stressed that it would emphasize that the jury should

consider each charge individually. In fact, at trial, the trial court did instruct the jury multiple times to consider each case individually.

**{¶46}** In our review of the matter, we agree with the trial court that the law favors joinder. *State v. Ecker*, 9th Dist. No. 28431, 2018-Ohio-940, ¶ 10. Further, we agree that this case did present the unique common factor of the same arresting officer. These factors thus weighed in favor of joinder.

**{¶47}** Moreover, while Foster may argue that there was a potential for prejudice here, the evidence in this case was simple and direct related to each charge, limiting any potential for confusion. *State v. Lott*, 51 Ohio St.3d 160, 163–64, (1990) (when simple and direct evidence exist, an accused is not prejudice by joinder regardless of nonadmissibility of evidence as "other acts" under Evid.R. 404(B)). Furthermore, the jury was specifically instructed to evaluate each case separately. *State v. Garner*, 74 Ohio St.3d 49, 1995-Ohio-168 (a jury is presumed to follow trial court's instructions). Based on these particular facts and circumstances, we do not find that the trial court abused its discretion by joining the cases for purposes of trial. Therefore, Foster's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶48}** In his fourth assignment of error, Foster argues that the trial court erred by refusing to accept a negotiated guilty plea between the parties at the final pretrial hearing.

Standard of Review

**{¶49}** The determination of whether to accept a plea agreement is within the sound discretion of the trial court. *State v. Moore*, 3d Dist. Union No. 14-06-43, 2007-Ohio-1763, ¶ 7. An abuse of discretion is more than an error in judgment; it suggests that the decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

Analysis

**{¶50}** At the final pretrial hearing on this case, the trial court stated, "I understand there may have been some plea negotiations. What would you like to place on the record[?]." (June 29, 2022, Tr. at 3).

**{¶51}** The prosecutor then indicated that there were "a few last-second negotiations that we were discussing." (*Id*. at 4). The prosecutor narrated that the "plea negotiations" were that Foster would enter a plea to the sole OVI charge in trial court case 2021-CR-14, without a specification, and the parties would recommend a 24-month prison term. In exchange, the State would agree to dismiss the 2021-CR-164 case in its entirety, and any jail-time credit from the 2021-CR-164 case would be applied to the 2021-CR-14 case. Further, the State would agree to remain silent as to any motion for judicial release.

**{¶52}** After reciting the "last-second negotiations," the prosecutor stated: "This should resolve the two pending matters that are set for [trial] next week, if

that is in fact accepted by the Court, *and by the Defendant[.]*" (Emphasis added.) (*Id*. at 5).

**{¶53}** Once the prosecutor was done narrating the "last-second negotiations," the trial court indicated it would not be willing to accept such a plea agreement.

> **These are two felonies of the third degree, OVIs, they're – they both have specs. I don't think it's a fair and just and fair** [sic] **resolution, so I'm not willing to accept it. * * ***
>
> **If you want to come back to the Court with something else maybe, I might consider it, but that, I would not agree with that."**

(*Id*. at 7). There was no further discussion regarding plea agreements.

**{¶54}** Foster now argues that the trial court abused its discretion by rejecting the "plea agreement" in this case. However, in our review of the matter, we emphasize that the record does not reflect that there was a firm, concrete agreement between the parties. There were "last-second negotiations" about a *possible* resolution, but when the prosecutor stated the potential agreement, she specifically mentioned that the agreement still had to be accepted by the trial court *and the defendant*. Neither defense counsel, nor the defendant, at any time, indicated that they had a firm agreement with the prosecution. For this reason alone, we do not find that the trial court abused its discretion.

**{¶55}** Notwithstanding this point, even assuming that there was a firm plea agreement and that the prosecutor was speaking for both parties, we do not find that

the trial court abused its discretion here. The trial court noted that Foster was facing two third degree felony charges, each with specifications that each individually carried up to 5 years in prison. Foster was thus facing a max, consecutive potential prison term in excess of 15 years, and the State was offering a deal wherein Foster's sixth and seventh OVI offenses within 20 years would result in 2 years or less incarceration. At the time the "plea agreement" was presented to the trial court, the trial court had already been through both suppression hearings and was aware, at least to some extent, of the evidence that would be presented at trial. The trial court felt that on the whole, the proposed plea agreement was not a fair and just result.

**{¶56}** The trial court was thus informed of the facts and circumstances and made a decision based on those specific circumstances. This is not a situation where the trial court had a blanket-policy to reject potential plea agreements, which has been found not to be permissible. *See State v. Caldwell*, 8th Dist. Cuyahoga No. 99166, 2013-Ohio-5017, ¶ 11 ("A blanket policy rejecting plea agreements results in rejections based on policy rather than reason."). Given the facts and circumstances presented herein, we do not find that the trial court abused its discretion in rejecting the plea agreement. For all of these reasons, Foster's fourth assignment of error is overruled.

*Conclusion*

**{¶57}** Having found no error prejudicial to Foster in the particulars assigned, Foster's assignment of error are overruled and the judgments of the Hancock County Common Pleas Court are affirmed.

***Judgments Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**